# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACY LEAH SIMONSON,　　　　　　:
　　　　　Plaintiff　　　　　　　　:　　Action No. 3:16-CV-0631
　　　　　　　　　　　　　　　　　:
　　　v.　　　　　　　　　　　　　:　　(Judge Nealon)
　　　　　　　　　　　　　　　　　:
NANCY A. BERRYHILL,[1]　　　　　:　　(Magistrate Judge Arbuckle)
Acting Commissioner of Social Security,　:
　　　　　Defendant　　　　　　　　:

FILED
SCRANTON

NOV 2 2 2017

PER _____
　　　DEPUTY CLERK

## MEMORANDUM

## Background

On April 15, 2016, Plaintiff, Stacy Leah Simonson, filed a complaint

seeking review of the Commissioner of the Social Security Administration's

("Commissioner") denial of her application for disability insurance benefits under

Title II of the Social Security Act. (Doc. 1). On June 24, 2016, Defendant filed an

Answer and Transcript. (Docs. 9 and 10). On July 22, 2016, Plaintiff filed a brief

in support of her complaint. (Doc. 11). On August 18, 2016, Defendant filed a

brief in opposition. (Doc. 12). On August 26, 2016, Plaintiff filed a reply brief.

(Doc. 13). On June 13, 2017, the case was referred to United States Magistrate

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill
should be substituted for former Acting Commissioner, Carolyn W. Colvin, as the
defendant in this suit. No further action needs to be taken to continue this suit by
reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C.
§ 405(g).

Judge William I. Arbuckle. On November 2, 2017, a Report and Recommendation ("R&R") was issued by Magistrate Judge Arbuckle, recommending that the appeal be granted, the decision of the Commissioner be vacated, and final judgment be entered in favor of Plaintiff and against Defendant. (Doc. 14). On November 14, 2017, Defendant filed objections and Plaintiff then filed a response to the objections. (Docs. 15 and 16). Having reviewed the reasoning of the Magistrate Judge, the R&R will not be adopted, the objections will be sustained, the appeal will be denied, the decision of the Commissioner will be affirmed, and judgment will be entered in favor of Defendant and against Plaintiff.

**Standard of Review**

When objections to a report and recommendation have been filed under 28 U.S.C. § 636(b)(1)(C), the district court must make a de novo review of those portions of the report to which specific objections are made. See Henderson v. Keisling, 386 Fed. Appx. 164, 166 (3d Cir. 2010) (explaining that "only those 'specific objections' made by [the plaintiff] must be separately considered by the District Court") (citing Goney v. Clark, 749 F.2d 5, 67 (3d Cir. 1984) ("providing a complete de novo determination where only a general objection to the report is offered would undermine the efficiency the magistrate system was meant to contribute to the judicial process")). The written objections must "specifically

identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections." M.D. Pa. Local Rule 72.3. In the absence of specific objections, review may properly be limited to ascertaining whether there is clear error that not only affects the rights of the plaintiff, but also seriously affects the integrity, fairness, or public reputation of judicial proceedings. See Sanders v. Downs, 2013 U.S. Dist. LEXIS 89743, *8-9 (M.D. Pa. 2013) (Caputo, J.) (explaining that the court reviews those portions of the R&R to which specific objections are made de novo, while the "remainder of the R&R is reviewed for clear error"); Cruz v. Chater, 990 F. Supp. 375, 377 (M.D. Pa. 1998) (Vanaskie, J.). The district court may accept, reject, or modify, in whole or in part, the findings and recommendations contained in the report. 28 U.S.C. § 636(b)(1)(C); M.D. Pa. Local Rule 72.3.

**Discussion**

Initially, the Magistrate Judge appropriately sets forth the standard for reviewing a Social Security appeal, the sequential evaluation process used by an administrative law judge to determine whether the claimant is disabled, the case background, the medical records, and the ALJ's decision, which are herein adopted as such and incorporated into this opinion. (Doc. 14, pp. 1-13). Regarding Plaintiff's first two arguments that the ALJ erred in the weight she

afforded to the opinion evidence and erred in failing to include the use of an assistive device in the hypothetical questions posed to the VE, the Magistrate Judge did not provide review of these assertions. Instead, the Magistrate Judge turned to Plaintiff's final argument that there was new and material evidence that would affect the outcome of the case and that there was good cause as to why this evidence was not presented to the ALJ. (Doc. 14, pp. 13-17). The Magistrate Judge ultimately determines that Plaintiff met the burden of proving that the evidence introduced to this Court was new and material and that good cause exists as to why Plaintiff failed to present this evidence to the ALJ, stating the following:

> I find that [Plaintiff] has made an adequate showing to justify remand for the consideration of new evidence. CFCE Uetz's report and Dr. Flowers' opinion are clearly new, in that they were compiled after the ALJ issued her decision on January 30, 2015. Furthermore, the new evidence is not cumulative of evidence already in the record. CFCE Uetz's report provides objective findings that were absent from the treatment notes of both Dr. Cullen and Dr. Flowers.

> With respect to the issue of materiality, based on Dr. Flowers' opinion, this evidence relates-back to the relevant period. Furthermore, it cannot be said that this new evidence would not have changed the outcome of the case. The ALJ discounted two [(2)] opinions by [Plaintiff]'s primary care physician and two [(2)] opinions by a treating specialist because their treatment records failed to provide any insight into [Plaintiff]'s condition, and neither supported or contradicted these opinions.

> The new report contains objective testing of [Plaintiff]'s

physical capabilities, that, per [Plaintiff]'s treating rheumatologist, is consistent with [Plaintiff]'s abilities during the relevant period. Thus, these new records may supply the ALJ with a better understanding of the basis for the treating source opinions previously accorded no weight.

Last, I find that good cause exists for [Plaintiff]'s failure to present this evidence to the ALJ. I note that Courts must exercise caution i[n] (sic) granting remand for the consideration of new evidence, and I do so in this case.

...............................................................................................

[Plaintiff] was represented by a non-attorney during the administrative proceedings. Upon obtaining an attorney, that attorney recognized the evidentiary gap that led the ALJ to accord no weight to these treating source medical opinions, and took steps to rectify it. Given the change in representation in this case, the number of treating source opinions that were summarily discounted, and the fact that the four [(4)] discounted opinions suggest that [Plaintiff] was not capable of engaging in the range of light work described by the ALJ, I find that granting remand in this case presents little danger of encouraging claimants to seek after-acquired evidence merely to preserve a basis for remand. For the same reasons, I find that [Plaintiff] has demonstrated good cause for remand under sentence six of 42 U.S.C. § 405(g).

(Doc. 14, pp. 14-17).

In the objections, Defendant objected to this conclusion, asserting the following:

Consistent with this purpose, Plaintiff, who bears the burden in this ["good cause"] analysis, cannot establish "good cause" simply by pointing to the fact that evidence did not exist at the

5

time of the ALJ's decision (Pl.'s Reply at 10, ECF No. 13). Indeed, in <u>Scatorchia v. Comm'r of Soc. Sec.</u>, 137 F. App'x 468, 472 (3d Cir. 22005), the claimant submitted new medical evidence after the ALJ's decision, including "written observations by new doctors." <u>Id.</u> (emphasis added). The Third Circuit found no good cause because the plaintiff "provided no explanation for her failure to acquire this additional medical information prior to her hearing." <u>Id.</u> Similarly, in <u>Chandler</u>, the Third Circuit Court of Appeals found that the claimant failed to show good cause for submitting two [(2)] medial opinions after the ALJ's decision "because she has not explained why she did not attempt to obtain the evidence at a time when they could be considered by the ALJ." <u>Chandler</u>, 667 F.3d at 360 (internal quotation and alterations omitted) (emphasis added). <u>See also</u> <u>Bjorkman</u>, 2016 WL 6780711, at *12 ("[T]he fact that the letter did not exist when the ALJ closed the case is not a basis to find 'good cause' because Plaintiff has not presented evidence that the letter could . . . not have been obtained earlier.") (emphasis added); <u>Dwyer v. Colvin</u>, No. 3:13-CV-2114, 2014 WL 4546775, at *14 (M.D. Pa. Sept. 12, 2014) (Nealon, J.) (claimant failed to show good cause as to why evidence was not initially obtained and presented to the ALJ). Thus, Plaintiff's excuse for not submitting the evidence before the ALJ's decision because "it did not exist" fails to establish the requisite "good cause" element (Pl.'s Reply at 10, ECF No. 13). Plaintiff could have obtained these opinions prior to the ALJ's decision, but did not do so.

While the Magistrate Judge did not address or otherwise accept Plaintiff's explanation, he instead finds "good cause" based upon Plaintiff's change in representation from a non-attorney representative at the administrative stage to an attorney representative before the [D]istrict [C]ourt (R&R at 15-17, ECF No. 14). However, courts in this [C]ircuit have consistently held that a change in counsel is not a basis for "good cause."

...................................................................................

> Notably, the Third Circuit Court of Appeals has recently held that even a claimant's change from *pro se* status to an attorney representative, in and of itself, did not constitute good cause. Pennington v. Comm's of Soc. Sec., 683 F. App'x 168, 171 (3d Cir. 2017).

...................................................................................

> Plaintiff should not be permitted a second bite of the apple merely because she sought out counsel to proceed in federal court. The Court should not allow Plaintiff to reach back into a closed administrative proceeding by seeking out additional opinion evidence only after receiving an unfavorable decision from the ALJ.

> For these reasons, the Court should not adopt the R&R. Instead, for these reasons and those outlined more fully in the Commissioner's opening brief, the Court should reject Plaintiff's argument and affirm the ALJ's decision.

(Doc. 15, pp. 3-8).

Initially, this Court finds that Defendant's objection is specific because it addresses an issue not raised in prior briefings, either by Plaintiff or Defendant, namely the conclusion by the Magistrate Judge that "good cause" exists for the failure to present the new evidence due to change in representation from a non-attorney representative at the administrative level to an attorney for purposes of filing an appeal in federal court. See (Docs. 11, 12, 13, and 14) (Plaintiff argues that "good cause" exists for the failure to present the new evidence because "it did

not exist," without ever asserting that "good cause" exists due to a change of representation from a non-attorney to an attorney). As such, due to this specific objection, the R&R will be reviewed de novo, and not simply for clear error, in accordance with the aforementioned standard of review and in accordance with the substantial evidence standard of review as outlined in the R&R and adopted herein as such.

### 1.     "Good Cause" for Sentence Six Remand

This Court first turns to Defendant's objection to the Magistrate Judge's conclusion that Plaintiff met the burden of proving "good cause". Defendant argues this conclusion should not be adopted because the only explanation for "good cause" provided to this Court by Plaintiff was that the new evidence was not in existence before the ALJ made her decision.

The United States Court of Appeals for the Third Circuit has held that "although evidence considered by the Appeals Council is part of the administrative record on appeal, it cannot be considered by the District Court in making its substantial evidence review." Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). As a result, even if new evidence is presented to and considered by the Appeals Council, the District Court is limited to review of the ALJ's decision, not that of the Appeals Council. Id. Thus, evidence submitted after the

ALJ's decision cannot be used to argue that the ALJ's decision is not supported by substantial evidence. Matthews, 239 F.3d at 594-95.

However, such evidence can be considered to determine whether it provides a basis for remand under sentence six of Section 405(g). Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Under sentence six (6) of Section 405(g), a plaintiff has the burden of proving that the evidence is "new" and "material," and that "good cause" exists for not having incorporated the evidence into the administrative record before the ALJ made his or her determination. Id. The Third Circuit Court of Appeals explained that, to be material, "the new evidence [must] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition." Id. Furthermore, "material" means that the evidence must be probative. Id. The evidence, therefore, must create a reasonable probability that the new evidence would have changed the ALJ's decision had it been presented to him. Id.; see also Willis v. Colvin, U.S. Dist. LEXIS 50546, *22 (M.D. Pa. April 10, 2014) (Carlson, M.J.) ("A 'reasonable possibility,' while requiring more than a minimal showing, need not meet a preponderance test. Instead, it is adequate if the new evidence is material and there is a reasonable possibility that it is sufficient to warrant a

different outcome."). Finally, Plaintiff must show "good cause" for not incorporating the evidence into the earlier administrative record the ALJ used to determine the claim. Scatorchia v. Comm'r of Soc. Sec., 137 F. App'x 468, 472 (3d Cir. 2005).

In the case at hand, regardless of whether the evidence was "new" and "material," this Court finds that Defendant is correct in the assertion presented in the objection that Plaintiff did not meet the burden of proving that "good cause" exists for not presenting the new evidence to the ALJ. (Doc. 15). Plaintiff argues "good cause" exists because the evidence was not in existence; however, it is a well-established principle that mere failure to obtain evidence before the ALJ made a determination when it could have been obtained does not amount to "good cause." See Scatorchia, 137 F. App'x at 472 (holding that remand was not warranted because the plaintiff "[did] not provide any explanation for her failure to acquire this additional medical information prior to her hearing"); see also Matthews, 239 F.3d at 595 (holding that remand was not warranted as good cause was not shown because the plaintiff could not "explain [] why she did not attempt to obtain [an] evaluation at a time when it could be considered by the ALJ."). Furthermore, the Magistrate Judge's conclusion that "good cause" exists because Plaintiff had a change in representation from a non-attorney representative at the

administrative level to an attorney at the federal level is flawed for two (2)

reasons: (1) Plaintiff did not plead this reason for "good cause" in either of her

briefs; and (2) it has been held by the Third Circuit Court of Appeals that "good

cause" does not exist for even an instance where there is a change in

representation from *pro se* representation to an attorney. See Pennington v.

Comm's of Soc. Sec., 683 F. App'x 168, 171 (3d Cir. 2017) ("Finally, the District

Court concludes that Pennington knowingly waived her right to counsel and was

able to submit numerous records to the ALJ and present her case at the hearing.

Thus, her *pro se* status did not constitute good cause. [The Third Circuit]

agree[s]."). This is precisely the type of situation that the decision in Matthews

was meant to address, with the goal of preventing the opening of floodgates to

claimants hoping to get a "second bite at the apple." As such, because this Court

finds Plaintiff has not met her burden of proving "good cause" for her failure to

obtain and present this evidence to the ALJ before the determination was made,

Defendant's objection will be sustained and the Magistrate Judge's

recommendation that this matter be remanded under sentence six will not be

adopted.

2.    **Opinion Evidence**

This Court now turns to Plaintiff's assertion that the ALJ improperly

afforded weight to the opinion evidence, which was not discussed in the R&R, and, now therefore, requires de novo review, with Plaintiff's arguments being addressed in turn. (Doc. 11, pp. 13-20); (Doc. 13, pp. ).

The responsibility for deciding a claimant's RFC rests with the administrative law judge. See 20 C.F.R. § 404.1546. The Court recognizes that the residual functional capacity assessment must be based on a consideration of all the evidence in the record, including the testimony of the claimant regarding her activities of daily living, medical records, lay evidence and evidence of pain. See Burnett v. Commissioner of Social Sec. Admin., 220 F.3d 112, 121-122 (3d Cir 2000). The Commissioner's regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairments(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). Regardless of its source, the ALJ is required to evaluate every medical opinion received. 20 C.F.R. §404.1527(c).

In arriving at the RFC, an administrative law judge should be mindful that the preference for the treating physician's opinion has been recognized by the Third Circuit Court of Appeals and by all of the federal circuits. See, e.g.,

Morales v. Apfel, 225 F.3d 310, 316-18 (3d Cir. 2000). This is especially true when the treating physician's opinion "reflects expert judgment based on a continuing observation of the patient's condition over a prolonged time." Morales, 225 F.3d at 317; Plummer, 186 F.3d at 429; see also 20 CFR § 416.927(d)(2)(i)(1999) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

However, when the treating physician's opinion conflicts with a non-treating, non-examining physician's opinion, the ALJ may choose whom to credit in his or her analysis, but "cannot reject evidence for no reason or for the wrong reason." Morales, 225 F.3d 316-18. It is within the ALJ's authority to determine which medical opinions he rejects and accepts, and the weight to be given to each opinion. 20 C.F.R. § 416.927. The ALJ is permitted to give great weight to a medical expert's opinion if the assessment is well-supported by the medical evidence of record.

Pursuant to Social Security Regulation 96-6p, an administrative law judge may only assign less weight to a treating source opinion based on a non-treating, non-examining medical opinion in "appropriate circumstances." SSR 96-6p, 1996 SSR LEXIS 3. This regulation does not define "appropriate circumstances," but

13

gives an example that "appropriate circumstances" exist when a non-treating, non-examining source had a chance to review "a complete case record . . . which provides more detailed and comprehensive information than what was available to the individual's treating source." Id. (emphasis added).

Regardless of what the weight an administrative law judge affords to medical opinions, the administrative law judge has the duty to adequately explain the evidence that he or she rejects or affords lesser weight. Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 505-06 (3d Cir. 2009). "The ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000).

Additionally, in choosing to reject the evaluation of a treating physician, an ALJ may not make speculative inferences from medical reports and may reject the treating physician's opinions outright only on the basis of contradictory medical evidence. Morales, 225 F.3d at 316-18. An ALJ may not reject a written medical opinion of a treating physician based on his or her own credibility judgments, speculation or lay opinion. Id. An ALJ may not disregard the medical opinion of a treating physician based solely on his or her own "amorphous impressions, gleaned from the record and from his evaluation of the [claimant]'s credibility." Id. As one court has stated, "Judges, including administrative law judges of the

14

Social Security Administration, must be careful not to succumb to the temptation to play doctor" because "lay intuitions about medical phenomena are often wrong." Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir 1990).

To review, in the case at hand, the ALJ gave no weight to the opinions of: (1) Dr. Cullen rendered in February and October 2014, which limited Plaintiff to sedentary work, because they were not consistent with Dr. Cullen's May 2013 opinion and were not supported by the objective medical evidence; (2) Dr. Flowers rendered in July and December 2014 that limited Plaintiff to sedentary work because the physical examinations did not support these opinions; and (3) Dr. Rylko rendered in November 2014 that Plaintiff could perform less than sedentary work because the physical examination was within normal limits (Tr. 26-27). The ALJ gave some weight to the opinions of: (1) Dr. Cullen rendered in May 2013, but found Plaintiff to be more limited to light exertional work with postural and environmental activities and to "standing and walking up to 4 hours in an 8-hour workday and only one hour of standing and walking at one time"; and (2) the non-examining state agency physician, Dr. Zaydon, rendered in September 2013, because "it is mostly consistent with the objective findings that show [Plaintiff] was capable to work. However, in giving [Plaintiff] the benefit of the doubt, the undersigned further finds that she is slightly more limited than [] Dr.

Zaydon opined . . ." (Tr. 26-27). The ALJ gave limited weight to the opinions of: (1) the physical therapist because it was rendered by a non-acceptable medical source, but was "more credible than Dr. Cullen's later opinions"; and (2) Dr. Myer because "it is from a non[-]treating source, hired by a disability consulting firm" and was inconsistent with Dr. Garber's examination, which noted Plaintiff's exam was within normal limits, and was inconsistent with a normal tilt table test. (Tr. 25-26).

Plaintiff makes numerous assertions as to why the ALJ erred in affording weight to this aforementioned opinion evidence, which will now be addressed in turn.

### a. Dr. Cullen's February and October 2014 Opinions

Plaintiff argues that the ALJ erred in the weight she afforded to the opinions of Dr. Cullen rendered in February and October 2014 because the rejection: (1) was an inadequate and bare conclusory statement for both opinions; (2) was based on an improper reason for the October 2014 opinion; (3) discounted a positive Spurling's test that was objective medical evidence of nerve root compression; (4) failed to appreciated additional testing that occurred between the time Dr. Cullen rendered his 2013 and 2014 opinions; (5) "is inconsistent with Ninth Circuit case law and "common sense" that, in the instance of a deteriorating condition, a "more

recent medical report is considered the most probative"; and (6) failed to cite

authority that "a treating physician cannot change his opinion over time based

upon new evidence or upon the longitudinal record." (Doc. 11, pp. 13-18).

In addressing the first subsection, that the ALJ's explanations for rejecting

Dr. Cullen's opinions rendered in February and October 2014 were in adequate

and comprised of a bare conclusory statement, it is determined that the ALJ

sufficiently developed the record and outlined all relevant objective medical

evidence that she then relied on to determine the weight to be afforded to the

opinion evidence. (Tr. 22-25). The Third Circuit Court of Appeals determined the

following:

> Burnett does not require the ALJ to use particular language or
> adhere to a particular format in conducting his analysis.
> Rather, the function of Burnett is to ensure that there is
> sufficient development of the record and explanation of finding
> to permit meaningful review. In this case, the ALJ's decision,
> read as a whole, illustrates that the ALJ considered the
> appropriate factors in reaching the conclusion that [the
> plaintiff] did not meet the requirements for any listing,
> including Listing 3.02(A). The ALJ's opinion discusses the
> evidence pertaining to chronic obstructive and restrictive lung
> disease, specifically referencing 'pulmonary function studies . .
> . consistent with moderately severe obstructive and restrictive
> defects,' but pointing to the lack of pulmonary complications,
> and a finding that claimant's lungs were clear. Also, the ALJ
> noted that claimant's medical history showed no frequent
> hospitalization or emergency treatments. Tr. At 13-14. This
> discussion satisfies Burnett's requirement that there be

> sufficient explanation to provide meaningful review of the step
> three determination.

Jones v. Barnhart, 364 F.3d, 501, 505; See Rivera v. Commissioner of Social

Security, 164 F.App'x 260, 263 (3d. Cir. 2006) (holding that an ALJ's failure to

explain a determination . . . is harmless error if ". . . in reviewing the voluminous

medical evidence available to us, we found abundant evidence supporting the

position taken by the ALJ, and comparatively little contradictory evidence" and

thus does not warrant remand.).

The ALJ sufficiently developed the record by outlining the objective

medical evidence in detail before proceeding to weigh the opinion evidence. (Tr.

22-27). As such, it is concluded that, in accordance with Burnett, the ALJ did not

neglect the duty to develop the record, and therefore did not make bare conclusory

statements in rejecting the later opinions rendered by Dr. Cullen. Instead, this

Court finds, as will be discussed throughout this section of the opinion, that the

ALJ sufficiently outlined and explained the overwhelmingly normal findings of

the objective medical evidence of record, which in turn support the determination

that the later opinions rendered by Dr. Cullen should be given no weight because

they were inconsistent with the May 2013 opinion that was consistent with the

objective medical evidence of record. Furthermore, even if it could be determined

that the ALJ improperly rejected Dr. Cullen's October 2014 opinion, noting it was "inconsistent with Dr. Cullen's earlier opinion in May 2013," any improper rejection would be considered harmless error because this opinion essentially echoed the opinion rendered in February 2014, which as discussed, was not supported by the objective medical evidence. See Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) (articulating harmless error standard).

Applying this same rationale, it is held that even though the ALJ did not find that a positive Spurling's test and additional medical testing that occurred after the May 2013 opinion was rendered were enough to give more weight to Dr. Cullen's later opinions, this does not lead to the conclusion that these elements of the record were not taken into consideration by the ALJ. The ALJ discussed all of the objective medical evidence, including the positive Spurling's test and additional medical testing, and based on the overall normal examination findings, gave no weight to the later opinions of Dr. Cullen because they were not consistent with the overall objective medical evidence as weighed by the ALJ. (Tr. 22-27). It is not the duty of this Court to re-weigh the evidence, but rather to determine whether substantial evidence exists in support of the ALJ's decision. See Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966) (In an adequately developed factual record, substantial evidence may be "something less

than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."). Because the ALJ outlined the objective medical evidence that, in this Court's review, presented overall normal findings, and properly relied on this evidence in affording no weight to the later opinions of Dr. Cullen, substantial evidence supports the ALJ's decision to not place greater weight on the positive Spurling's test or the additional testing that occurred.

This Court now turns to Plaintiff's arguments that "common sense" and case law from the Ninth Circuit Court of Appeals should have compelled the ALJ to give more weight to the more recent opinions of Dr. Cullen, and that the ALJ erred in failing to cite authority that "a treating physician cannot change his opinion over time based upon new evidence or upon the longitudinal record." (Doc. 11, pp. 13-18). First, this Court is not bound by cases from other Circuit Courts, and does not feel so inclined to adopt Plaintiff's mandate or "common sense" argument that this Court should find that the ALJ erred in not considering a more recent medical report as probative when a condition is deteriorating, because, once again, in the case at hand, the overall objective medical evidence in the record, more specifically the lack of positive or abnormal examination findings

later on in the record, does not support the conclusion that Plaintiff's condition was deteriorating. (Tr.22-25, 213-219, 236-244, 256-259, 271, 304-313, 317, 321-324, 346, 352-358, 363, 380-383, 391, 422, 425, 459, 464, 472). Furthermore, in response to Plaintiff's assertion that the ALJ cited no authority that a treating physician cannot "change his opinion over time based upon new evidence," it is held that the ALJ was under no duty to cite to such authority because the objective medical evidence supports the opinion of Plaintiff's treating physician, Dr. Cullen, rendered in May 2013, but does not support the more restrictive opinions rendered by Dr. Cullen in February and October 2014 or those rendered by Dr. Flowers. (Tr. 22-25, 213-219, 236-244, 256-259, 271, 304-313, 317, 321-324, 346, 352-358, 363, 380-383, 391, 422, 425, 459, 464, 472). As such, this Court will not disturb the ALJ's determination based on this assertion.

### b. Dr. Flowers' Opinions

Plaintiff asserts that the ALJ erred in the assigning no weight to the opinions of Dr. Flowers because: (1) the bases for rejection, which was that Plaintiff's examinations were normal other than multiple tender points, is erroneous and a mischaracterization of the record because Plaintiff's MRI showed bulging discs; (2) the ALJ points to no evidence that "diffuse tenderness, either alone or in concert with cervical and lumbar radiculopathy, would result in a

"light" [RFC] rather than the limitations opined upon by Dr. Flowers" and thus improperly substituted her own opinion for that of a medical one; and (3) Dr. Flowers was a specialist whose opinion should be given more weight. (Doc. 11, pp. 21-23).

Regarding Plaintiff's argument that Dr. Flowers was a specialist whose opinion should be given more weight, as discussed herein, because the objective medical evidence does not support Dr. Flowers' opinions, as explained by the ALJ in the opinion when read as a whole, this assertion fails. Plaintiff points to the fact that Dr. Flowers found she had diffuse tenderness; however, such a finding is subjective, not objective medical evidence. There is no evidence in the record that a physical examination supports these opinions. An MRI with what was described by other physicians as benign does not amount to objective medical evidence supporting the limitations as opined by Dr. Flowers. (Tr. 22-25). As such, the ALJ's determination will not be disturbed on appeal based on this assertion.

Consequently, upon review of the entire record, and in consideration of applicable statutes and precedent, it is determined that substantial evidence supports the weight the ALJ assigned to the aforementioned opinions because the record consistently demonstrates a multitude of normal findings via examinations and objective medical tests, and the ALJ adequately explained why she discounted

or rejected the aforementioned opinions in accordance with these normal findings. (Tr. 22-25, 213-219, 236-244, 256-259, 271, 304-313, 317, 321-324, 346, 352-358, 363, 380-383, 391, 422, 425, 459, 464, 472). This Court cannot emphasize enough that the ALJ correctly determined that the objective medical evidence does not support the later, more restrictive opinions rendered by Dr. Cullen, Dr. Flowers, or Dr. Rylko. The fact remains that the medical record, aside from one (1) MRI report, does not contain enough abnormal physical examinations that would support a more restrictive finding than that determined by the ALJ. (Tr. 25-27). That is not to say that any such abnormal physical examinations, were they performed and a part of the record, would not support these later more restrictive opinions. However, this Court is limited to determining whether the record before the ALJ, and the resulting determination of the ALJ based on this record, is supported by substantial evidence. In this case, because the record is basically devoid of abnormal physical examination findings, as explained by the ALJ and cited to in this opinion, this Court determines that substantial evidence supports the ALJ's weight of the opinion evidence. As such, the ALJ's determination will not be disturbed on appeal based on Plaintiff's assertions in relation to the opinion evidence.

### 3.   <u>Cane Use</u>

Plaintiff asserts that the ALJ erred in failing to discuss and include cane-related limitations in the RFC assessment and the hypothetical questions posed to the VE. (Doc. 11, pp. 6-13). She argues the ALJ's failure to include a cane-related limitation was not harmless error because: (1) "a person who requires the use of a cane cannot perform the exertional demands of light work as found by the ALJ"; and (2) "a person who requires the use of a cane would necessarily have limited use of her hands" that would have an impact on Plaintiff's RFC "by virtue of the fact that one or both upper extremities are not available for such activities as lifting, carrying, pushing, and pulling." (Doc. 11, pp. 6-9).

According to Social Security Regulation 96-9p, an administrative law judge only needs to consider "medically required" devices such as canes when medical documentation supports the medical necessity of such, stating the following:

> To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing and describing the circumstances for which it is needed.

See SSR 96-9p. Therefore, an assistive device, such as a cane, must be <u>medically required</u> as established by <u>medical documentation</u>. <u>Keys v. Colvin</u>, 2015 U.S. Dist. LEXIS 34181, at *35 (M.D. Pa. March 19, 2015) (Conaboy, J.) (emphasis

added); See Howze v. Barnhart, 53 F. App'x 218, 222 (3d Cir. 2002) (holding that medical necessity was not established by a doctor's reference to a "script" and by checking a box on a form.).

Initially, this Court determines that the ALJ did not err in failing to discuss the cane in the opinion because an administrative law judge does not have the obligation to refer to and discuss every single piece of evidence in the record that could impact the disability determination. See Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001).

Furthermore, this Court agrees with Defendant that it is not clear from the record that any assistive device was medically required as established by medical documentation. It was noted in the record, and discussed by the ALJ, that Plaintiff: had a normal gait; ambulated without assistance; had intact toe, heel, and tandem gait; and had normal range of motion and motor testing for her extremities. (Tr. 22-27, 214-216, 256, 317, 422, 455, 464, 472); See Williams v. Colvin, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (Conner, J.) ("Absent such documentation, an ALJ need not accommodate the use of a cane in a residual functional capacity assessment, even if the claimant was prescribed a cane by a doctor."). In fact, Plaintiff even admitted that the cane she had been using for a few months had not been prescribed by a physician. (Tr. 63) (emphasis added).

Simply because one physician, in a medical opinion, mentioned that Plaintiff should use an assistive device to ambulate if walking more than ten (10) minutes is not enough medical documentation that would require the ALJ to note the need for an assistive device in the RFC and then include that need in the hypothetical questions posed to the VE. As such, substantial evidence support the ALJ's decision to not include the cane in the RFC or in the hypothetical questions presented to the VE, and the ALJ's determination will not be disturbed on appeal based on this assertion.

## CONCLUSION

Based upon a thorough review of the R&R and objections and upon de novo review of the appeal, the Report and Recommendation, (Doc. 14), will not be adopted and the objections, (Doc. 15), will be sustained. Therefore, pursuant to 42 U.S.C. § 405(g), because substantial evidence supports the ALJ's determination, the appeal will be denied, the decision of the Commissioner will be affirmed, judgment will be entered in favor of Defendant and against Plaintiff, and the Clerk of Court will be directed to close this matter.

A separate Order will be issued.

**Date:** November 21, 2017                      /s/ William J. Nealon
                                                 **United States District Judge**